UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| GARDEN OAKS MAINTENANCE | § | Case No. 18-60018 |
| ORGANIZATION, INC. | § | Chapter 11 |
| | § | |
| Debtor. | § | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' NOTICE OF RULE 2004
EXAMINATION OF GARDEN OAKS MAINTENANCE ORGANIZATION, INC.**

TO:   Garden Oaks Maintenance Organization, Inc.,
      c/o Johnie Patterson
      Walker & Patterson, P.C.
      P.O. Box 61301
      Houston, TX 77208-1301
      713-956-5577
      jjp@walkerandpatterson.com

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2004, the Official Committee of Unsecured Creditors (the "Committee") of Garden Oaks Maintenance Organization, Inc. (the "Debtor"), intends to examine the designated representative(s) of Garden Oaks Maintenance Organization on **July 19, 2018 at 1:00 p.m.** (or such other time that may be agreed). The examination will take place at the offices of **Diamond McCarthy LLP, 909 Fannin St., Suite 3700, Houston, Texas 77010**, unless otherwise agreed, and will continue from day to day until completed. The examination will be taken before a court reporter authorized by law to administer oaths and may be videotaped.

In addition, the Debtor is required to produce the original or a copy of all Documents listed and defined on the subpoena duces tecum attached as **Exhibit 1** to this notice **on or before**

**July 13, 2018** to the offices of **Diamond McCarthy LLP, c/o Charles M. Rubio, 909 Fannin St., Suite 3700, Houston, Texas 77001**.

The designated representative of Garden Oaks Maintenance Organization, Inc. shall be the individual or individuals with the most knowledge as to the following subject matters:[1]

(1) Collection of Receivables;

(2) Records of Transaction Fees;

(3) Retention of financial records under Debtor's Document Retention Policy, dated August 19, 2015;

(4) Debtor's bookkeeping and/or accounting system; and

(5) Current and past financial status of the Debtor.

Dated:  June 28, 2018

Respectfully submitted,

DIAMOND McCARTHY LLP

*/s/ R. J. Shannon*
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
R. J. Shannon
TBA No. 24108062
robert.shannon@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Proposed Counsel for the Official Committee of Unsecured Creditors.*

---

[1] Capitalized terms used below have the meanings assigned to such terms in the Exhibit 1.

## CERTIFICATE OF CONFERENCE

This is to certify that, on June 26 and 27, 2018, I emailed Johnie Patterson, counsel to Garden Oaks Maintenance Organization, Inc., in an attempt to confer regarding the relief requested herein.  No agreement was reached through those emails.

*/s/ R. J. Shannon*
R. J. Shannon

## CERTIFICATE OF SERVICE

This is to certify that, on June 28, 2018, a copy of the foregoing notice was served via electronic means on all parties who receive ECF notice in this case.

*/s/ R. J. Shannon*
R. J. Shannon

# EXHIBIT 1
# SUBPOENA DUCES TECUM
# INSTRUCTIONS

1. All Documents described that are in Your possession, custody, or control, including Documents, wherever located, within the possession, custody, or control of Your advisors, Affiliates, agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, subsidiaries, and other persons acting or who have acted on behalf of the foregoing shall be produced as directed herein.

2. Any Document requested herein that is not in Your immediate physical possession, but which You have a right to obtain from a third person or otherwise subject to Your control, shall be obtained and produced as directed.

3. The selection of Documents from files and other sources shall be performed in such a manner as to insure that the file or the source from which a Document is obtained may be identified.

4. Documents attached to other Documents or materials shall not be separated unless sufficient records are kept to permit reconstruction of the grouping.

5. You shall produce all electronically stored information in accordance with the following specifications:

   i. Form of Production. Produce electronically stored information in single page tiff format (Group IV tiff at 300 dpi) with standard Concordance formatted load file (.dat), including all metadata. Name each tiff file with unique name matching the Bates number labeled on the corresponding page. Group every 10,000 tiffs into a new folder; do not create a separate folder for each Document.

   ii. Image Load File. Provide an image load file (Opticon file) that contains Document boundaries, page counts, and volume information.

   iii. Document Text. For Documents that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate Document-level *.txt files named for the beginning Bates number of the associated Document. Provide OCR text for Documents without extracted text available (non-searchable PDFs, etc.). Group 1000 document text files per incrementally named "TEXT" directories, separate from image directories. For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document, in separate Document-level *.txt files named for the beginning Bates number of the associated Document. Clearly label any redacted material to show the redactions on the tiff

        image. Also provide a comma-delimited extracted text list file with each Document's beginning bates number along with the path to the associated extracted text/OCR text file.

    iv.    Native Production For Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the Bates number on the first page of the corresponding tiff production of the file / document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

    v.    De-duplication. Produce a single copy of each electronic Document for which exact duplicates exist. For e-mail messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties. For e-mail attachments and stand-alone electronic files, consolidate duplicates based on MD5 hash of the entire file.

    vi.    Metadata. Produce extracted metadata for each Document in the form of a Concordance load file (.dat), including the following fields (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject line, file name, e-mail sent date, email sent time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, source, source folder, MD5 hash value, native file path location, and confidentiality designation. Documents shall be produced in such fashion as to identify the location of the Document and, where applicable, the natural Person in whose possession it was found.

6.    All Documents produced in response to this request shall be produced en toto notwithstanding the fact that portions thereof may contain information not requested, and shall include interim and drafts as well as final editions of the Document, and shall include all additions or copies of a Document which are not identical to (whether due to handwritten notation, or revisions, or otherwise) the original or other produced copy of the Document.

7.    If any Documents requested herein are withheld from production on the alleged grounds of privilege or immunity (whether under common law, statute, or otherwise), each such Document is to be identified by stating: (a) the identity of each person who prepared and/or signed the Document; (b) the identity of each person designated as an addressee; (c) the identity of each person who received any copy of the Document; (d) the date of the Document; (e) the subject matter of the Document; (f) the type of Document; and (g) the basis for withholding the Document.

8. If any Document requested herein contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Documents.

9. In the event that any Document requested herein has been destroyed or discarded, that Document is to be identified by stating: (a) any address or any addressee; (b) any indicated or blind copies; (c) the Document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the Document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the Document presently exist and, if so, the name of the custodian of each copy.

10. Any copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document, whether by reason of handwritten or other notation or any omission, shall constitute a separate Document and must be produced, whether or not the original of such a Document is within Your possession, custody, or control. A request for any Document shall be deemed to include a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or Document comparisons, in addition to the Document itself. Each Document is to be produced in its entirety, without abbreviation or expurgation.

## DEFINITIONS

1. The term "Account Records" means all Transfer Fee information for properties in the Garden Oaks community.

2. The term "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

3. The terms "all," "each" and "any" shall be construed to mean all, each, every, and any.

4. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. The term "Bank Statements" means the periodically issued records of the balance in Garden Oaks Maintenance Organization, Inc.'s bank accounts indicating the amounts that have been paid into and withdrawn from the accounts.

6. The term "Bankruptcy Case" means the voluntary chapter 11 case of the Debtor, In re Garden Oaks Maintenance Organization, Inc., Case No. 18-60018, pending before the Court.

7. The term "Court" means the United States Bankruptcy Court for the Southern District of Texas.

8. The term "D&O Policy" means any insurance policy payable Garden Oaks Maintenance Organization, Inc. or Garden Oaks Maintenance Organization, Inc., or the officers and directors thereof as indemnification or reimbursement for losses or advancement of defense costs in the event an insured suffers a loss as the result of a legal action brought for alleged wrongful acts in their capacity as directors and officers and any related documents, including any schedules, exhibits, or annexes thereto.

9. The term "Debtor" means Garden Oaks Maintenance Organization, Inc., and any advisors, Affiliates, agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, and other Persons acting, or who have acted, on behalf of the foregoing.

10. The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), made applicable to this proceeding by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate Document within the meaning of this term.

11. The term "Financial Statements" means the periodically prepared records of the financial activities and position of Garden Oaks Maintenance Organization, Inc., including records of assets and liabilities, income and expenses, and cash flow over time.

12. The term "including" means including but not limited to.

13. The term "Legal Invoice" means any document purporting to demonstrate that fees and or expenses are owed are owed on account of services provided by an attorney or law firm, including detailed time entries related thereto.

14. The term "Monthly Operating Reports" means the reports required to be prepared and filed pursuant to Rule 2015 of the Federal Rules of Bankruptcy Procedure and the *Region 7 Guidelines for Debtors-In-Possession*.

15. The term "Person" means a natural person or any corporation, partnership, association, joint venture, firm, or other business enterprise or legal entity, and includes both the singular and the plural.

16. The term "Receivables" means any amount previously received by Garden Oaks Maintenance Organization, Inc., or to which Garden Oaks Maintenance Organization, Inc. asserts that it is entitled to receive, including all past Transfer Fees collected by Garden Oaks Maintenance Organization, Inc.

4

17. The terms "regarding", "related to", "relate to", "relating to", "referred to", "refer to", and "referring to" mean having any relationship or connection to, concerning, being connected to, commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical, or causal connection.

18. The term "Transfer Fees" means any amount received by Garden Oaks Maintenance Organization, Inc. related to the conveyance of real property by one person to another.

19. The term "Voluntary Contribution Requests" means any notice, letter, or other communication in which Garden Oak Maintenance Organization, Inc., requested voluntary contributions from owners or residents of real property within Garden Oaks sections 1, 2, 3, 4, or 5.

20. The term "You" or "Your" means Garden Oaks Maintenance Organization, Inc. and any of their Affiliates agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, and other Persons acting, or who have acted, on behalf of the foregoing.

## DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED

Any and all:

1. Account Records.

2. Audited Financial Statements for year 2017.

3. Schedule of Receivables including amounts, payor, and date of receipt.

4. Voluntary Contribution Requests.

5. Legal Invoices for years 2016, 2017, and 2018.