UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | | |
|---|---|---|---|
| In re: | § | | |
| | § | | |
| **GARDEN OAKS MAINTENANCE** | § | **CASE NO.** | **18-60018-H2-11** |
| **ORGANIZATION, INC.,** | § | | |
| | § | | |
| **DEBTOR.** | § | | |

---

**PLAN OF REORGANIZATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF GARDEN OAKS MAINTENANCE ORGANIZATION**

---

Pursuant to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, the Official Committee of Unsecured Creditors of Garden Oaks Maintenance Organization (the "*Committee*") in the above-captioned Chapter 11 Case hereby respectfully proposes the following Plan of Reorganization under chapter 11 of the Bankruptcy Code.

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms.

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under §§ 328, 330(a) or 331 of the Bankruptcy Code, arising under §§ 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with: (i) applications filed pursuant to §§ 328, 330 and 331 of the Bankruptcy Code; (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (iii) applications for allowance of Administrative Expenses.  To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.    "*Administrative Claims*" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Plan or Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under §§ 503(b) (including claims under §§ 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of GOMO (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (ii) all fees and charges assessed against the Estate under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930); *provided, however,* that such Administrative Claims shall not include claims for Accrued Professional Compensation.

3.    "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the entry of the Confirmation Order and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

4.    "*Adversary Case*" means the lawsuit filed by the Committee against GOMO seeking to enjoin GOMO from collecting the Transfer Fee on the grounds that GOMO was not properly formed with respect to the Transfer Fee and thus did not have the authority to collect the Transfer Fee.

5.      "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (i) a Claim that has been scheduled by GOMO in its Schedule as other than disputed, contingent or unliquidated; (ii) a Claim that has been allowed by a Final Order; (iii) a Claim that is allowed: (a) in any stipulation of amount and nature of such Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation by GOMO of the amount and nature of such Claim executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim that is allowed pursuant to the terms of this Plan; or (v) a Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the objection deadline.  Any claim that has been or is hereafter listed in the Schedule as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by GOMO and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to § 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes GOMO, as applicable.  For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

6.      "*Available Cash*" means, with respect to any point in time, GOMO's Cash remaining at such point in time.

7.      "*Avoidance Actions*" include all avoidance actions under §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

8.      "*Bankruptcy Code*" means §§ 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, the Local Rules of the Bankruptcy Court, and general orders and chamber procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

11.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Federal Rules of Bankruptcy Procedure 9006(a).

12.     "*Current Bylaws*" means the current bylaws of GOMO.

13.     "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments.

14.     "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity

claims, defenses, counterclaims and cross claims, now owned or hereafter acquired by GOMO or the Estate that are or may be pending or on or have accrued prior to the Effective Date against any person or entity other than the GOMO based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; *provided, however*, that "*Causes of Acton*" shall exclude any Causes of Action released in the Plan.

15.　　"*Chapter 11 Case*" means the chapter 11 case commenced when GOMO filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned Case No. 18-60018.

16.　　"*Claim*" has the meaning set forth in § 101(5) of the Bankruptcy Code.

17.　　 "*Class*" means a category of Claims or Member Interests as set forth herein pursuant to § 1122(a) of the Bankruptcy Code.

18.　　"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket in this Chapter 11 Case.

19.　　"*Confirmation Hearing*" means the hearing to consider confirmation of the Plan in accordance with §§ 1128(a) and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

20.　　"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant § 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents.  The Confirmation Order may contain terms that supersede the terms in this Plan.

21.　　"*Consummation*" means the occurrence of the Effective Date.

22.　　"*Creditor*" has the meaning set forth in § 101(10) of the Bankruptcy Code.

23.　　The "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case by the U.S. Trustee for the Southern District of Texas, pursuant to § 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time.

24.　　"*Court*" means either the Bankruptcy Court or court of competent jurisdiction.

25.　　"*GOMO*" means Garden Oaks Maintenance Organization.  For avoidance of doubt, unless context demands otherwise, the term "*GOMO*" includes the Garden Oaks HOA.

26.　　"*Garden Oaks HOA*" means the Garden Oaks Homeowners Association, Inc., which, as of the Effective Date, shall be the successor-in-interest to GOMO pursuant to the provisions of this Plan.  For avoidance of doubt, unless context demands otherwise, the term Garden Oaks HOA includes GOMO.

27.　　"*Deed Restrictions*" means the restrictions applying to each of the Sections of Garden Oaks filed in the real property records of Harris County, Texas.

28.　　"*Disclosure Statement*" means the *Disclosure Statement in support of Plan of Reorganization*, dated January 28, 2019, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy

Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time in compliance with the Disclosure Statement Order, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

29.     "*Disclosure Statement Order*" means the order approving the Disclosure Statement entered by the Bankruptcy Court on _____ ____, 2019 [ECF No. ____].   The Disclosure Statement Order may contain terms that supersede the terms in this Plan.

30.     "*Disputed*" means any Claim or any portion thereof:  (i) that is listed on GOMO's Schedules as unliquidated, disputed or contingent; (ii) as to which GOMO, the Committee, or any other party-in-interest with standing has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (iii) otherwise disputed by GOMO or the Committee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

31.     "*Disputed Reserve*" means the total of the amounts that would be distributable to holders of Disputed Claims if such Disputed Claims had been Allowed.

32.     "*Distributions*" means the distributions of Cash or other consideration on account of Allowed Claims to be made under and in accordance with the Plan.

33.     "*Effective Date*" means the date specified in a notice filed by the Committee with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be the date by which all of the conditions to effectiveness of the Plan have been satisfied or waived in accordance with the Plan.

34.     "*Entity*" has the meaning set forth in § 101(15) of the Bankruptcy Code.

35.     "*Estate*" means the estate of GOMO created on the Petition Date by § 541 of the Bankruptcy Code.

36.     "*Executory Contracts and Unexpired Leases*" means all contracts and leases between GOMO and any third-parties that are "executory contracts" or unexpired leases as such terms are used in § 365 of the Bankruptcy Code.

37.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

38.     "*Final Distribution*" means the final distribution of Available Cash by the Garden Oaks HOA to General Unsecured Creditors which shall occur after payment of all Allowed Administrative Claims, Priority Claims, Secured Claims, and Professional Fee Claims and shall constitute the complete administration of the Estate.

39.     "*Final Order*" means an order, determination or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in GOMO's Chapter 11 Case (or on the docket of such other court of competent jurisdiction) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motion has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that

has been or may be filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice and as to which the time for any subsequent appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no such subsequent appeal or petition for certiorari or appropriate motion has been timely taken, or has been resolved by the court to which the order, determination or judgment was so subsequently appealed.

40. "*Garden Oaks*" means the Garden Oaks subdivision.

41. "*General Bar Date*" means August 27, 2018 as established in the Notice of Chapter 11 Bankruptcy Case [ECF No. 11].

42. "*General Unsecured Claims*" means all unsecured Claims asserted against GOMO.

43. "*Impaired*" means, with respect to a Claim or Class of Claims, has the meaning assigned in § 1124 of the Bankruptcy Code.

44. "*Secured Claims*" means all secured Claims asserted against GOMO.

45. "*Person*" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in § 101(15) of the Bankruptcy Code.

46. "*Petition Date*" means April 11, 2018, the date on which GOMO filed the Chapter 11 Case.

47. "*Plan*" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be.

48. "*Plan Supplement*" means, collectively, any supplement(s) to the Plan.

49. "*Priority Claims*" means Claims accorded priority in right of payment under § 507(a) of the Bankruptcy Code.

50. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bears to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

51. "*Proposed Amendments to the Bylaws*" means the proposed amendments to the bylaws of Garden Oaks HOA attached as **Exhibit A**.

52. "*Proposed Amendments to the Deed Restrictions*" means the proposed amendments to the Deed Restrictions attached to this Plan as **Exhibit B**.

53. "*Professional*" means any person or Entity employed pursuant to a Final Order in accordance with §§ 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services

rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to §§ 327, 328, 329, 330 or 331 of the Bankruptcy Code.

54.     "*Professional Fee Claim*" means any Claim made in this case for compensation for services rendered or reimbursement of expenses pursuant to §§ 327, 328, 329, 330 or 331 of the Bankruptcy Code.

55.     "*Professional Fee Claim Bar Date*" means the date that is forty-five (45) days after the Effective Date.

56.     "*Professional Fee Reserve*" means a reserve funded on the Effective Date from GOMO's Available Cash, which shall initially be funded in an amount equal to the estimated Accrued Professional Compensation through the Effective Date provided by each Professional before the Effective Date.  The Professional Fee Reserve shall not be encumbered.

57.     "*Releasees*" means the Committee, and the respective Professionals of GOMO and the Committee in this Chapter 11 Case; *provided*, *however*, that each such Person or Entity shall only be released as specifically set forth in the Plan.

58.     "*Representatives*" means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns.

59.     "*Section*" means any of Sections 1, 2, 3, 4 or 5 of Garden Oaks.

60.     "*Schedule*" means the schedule of assets and liabilities, schedule of executory contracts and statement of financial affairs filed by GOMO pursuant to § 521 of the Bankruptcy Code.

61.     "*Subordinated Claims*" means Unsecured Claims that are subordinated in payment to other Unsecured Claims by either contract or by an order of the Court.

62.     "*Taxing Authorities*" means any state or local governmental entities who have Claims for unpaid taxes against GOMO.

63.     "*Transfer Fee*" means the one-time assessment charged by GOMO when a parcel of property in Garden Oaks Sections 1, 2, 3 and 5 is transferred from one owner to another owner in the amount of 0.75% of the greater of (i) the gross purchase price of property or (ii) the appraisal of the property reflected in the records of the Harris County Appraisal District.

64.     "*U.S. Trustee*" means the United States Trustee appointed under § 591 of title 28 of the United States Code to serve in the Southern District of Texas.

65.     "*Unsecured Claim*" means a Claim against GOMO whose repayment is not supported by any property of the Estate under § 541 of the Bankruptcy Code.

66.     "*Unimpaired*" means, with respect to a Claim or Class of Claims, not Impaired.

B.      **Rules of Interpretation.**

1.      For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (v) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.      All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C.      **Exhibits and Schedules.**

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into, and are a part of the Plan, as if set forth herein.  All exhibits and schedules to the Plan, including the Plan Supplement, shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the Confirmation Hearing and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan.

## ARTICLE II
## ADMINISTRATIVE AND PRIORITY CLAIMS

A.      **Administrative Claims.**

Garden Oaks HOA shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim, in Cash, (a) on the later of:  (i) five (5) Business Days after the Effective Date (or, if not then due, within five (5) Business Days after the date when such Allowed Administrative Claim is due in the ordinary course of business); (ii) if such Claim is Disputed and is Allowed after the Effective Date, on the date that is five (5) Business Days after such Claim is Allowed by a Final Order; and (iii) at such later date and upon such terms as may be agreed upon by a holder of an Administrative Claim and GOMO, or (b) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided, however*, that Administrative Claims do not include Administrative Claims filed after the Administrative Claims Bar Date.

Upon the Effective Date of the Plan, any Person that paid a Transfer Fee during GOMO's bankruptcy case will be entitled to receive the full amount returned as an Allowed Administrative Claim.

**B.    Professional Compensation and Reimbursement Claims and the Professional Fee Reserve.**

All Professionals employed by GOMO or the Committee in the Chapter 11 Case shall (i) provide to GOMO and the Committee, before the Effective Date, an estimate of their Accrued Professional Compensation through the Effective Date, and (ii) file all requests for allowance of compensation and reimbursement of expenses pursuant to §§ 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in the Chapter 11 Case through the Effective Date by no later than the Professional Fee Claim Bar Date.

On the Effective Date, Garden Oaks HOA shall establish and fund the Professional Fee Reserve in accordance with the estimates provided by the Professionals.  In the event of excess amounts remaining in the Professional Fee Reserve after all Allowed Claims of Professionals have been paid in full, such excess amounts shall be considered Available Cash.

**C.    Priority Claims.**

Garden Oaks HOA shall pay each holder of an Allowed Priority Claim the full unpaid amount of such Allowed Priority Claim in Cash, on the later of: (i) five (5) Business Days after the Effective Date; (ii) five (5) Business Days after the date such Priority Claim becomes Allowed; and (iii) the date such Allowed Priority Claim is payable under applicable non-bankruptcy law.

**D.    General.**

Allowed Administrative Claims and Allowed Priority Claims shall be paid in full.  Allowed Claims for Accrued Professional Compensation shall be paid in full, immediately upon allowance from Available Cash.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS**

**A.    Summary.**

1.    In accordance with § 1123(a)(1) of the Bankruptcy Code, the Committee has not classified Administrative Claims or Priority Claims.

2.    The following table classifies Claims against GOMO for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or any portion thereof qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

**B.    Classification of Claims against GOMO.**

1.    Secured Claims

2.    General Unsecured Claims

**C.      Treatment of Claims against GOMO.**

     **1.      Secured Claim Class.**

(a)      *Classification*:  The Secured Claim Class consists of all Secured Claims.

(b)      *Allowance*:  GOMO shall determine any Allowed Secured Claims by agreement or by an order of the Bankruptcy Court.

(c)      *Treatment*:  Except to the extent that a holder of an Allowed Secured Claim agrees to a different treatment, holders of Allowed Secured Claims, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Secured Claim, each holder of an Allowed Secured Claim shall receive payment of its Allowed Secured Claim from Available Cash upon the Effective Date.

(d)      *Voting*:  The Secured Claim Class is unimpaired and, therefore, each holder of an Allowed Secured Claim will not be entitled to vote to accept or reject the Plan.

(e)      *Amount of Claim*:  The Committee does not believe that any creditors hold valid Secured Claims. The only purported secured claim is in the amount of $2,643.75.

     **2.      General Unsecured Class.**

(a)      *Classification*:  The General Unsecured Class consists of all General Unsecured Claims.

(b)      *Allowance*:  General Unsecured Claims shall be deemed allowed for voting purposes by an order of the Bankruptcy Court temporarily allowing the claim for voting purposes or as follows:

     (i)      If GOMO listed a General Unsecured Class Claim on its Schedule in an undisputed capacity, the holder of the Claim does not file a Proof of Claim and no party files an objection to the Claim or a motion to seek allowance or disallowance of the claim for voting purposes, the Claim will be Allowed in the amount indicated on the Schedule.

     (ii)      Whether or not GOMO listed a General Unsecured Class Claim on its Schedule, if the holder of the Claim files a Proof of Claim and there is no claim objection pending, the Claim will be Allowed for voting purposes in the amount indicated on the Proof of Claim

     (iii)      If there is an unresolved claim objection pending on the Voting Deadline, then such claim will be allowed for voting purposes only to the extent that any portion of the claim would remain if the claim objection is sustained in full unless the holder of the claim seeks temporary allowance of such claim by the date of hearing on confirmation in which case the claim will be allowed for voting purposes as provided by order of the Bankruptcy Court.

(c)      *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Class Claim agrees to a different treatment, each holder of an Allowed General Unsecured Class Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Class Claim, its pro rata share of Available Cash, that is, cash available after paying all other claims.  To the extent an objection is pending against a holder of a

General Unsecured Class Claim on the Effective Date, no Distributions shall be made until the entire Claim has been Allowed.

(d)     *Voting*:   General Unsecured Class is Impaired and, therefore, each holder of an Allowed General Unsecured Class Claim is entitled to vote to accept or reject the Plan.

(e)     *Amount of Claims*:   GOMO's Schedules reflect that approximately $3 million is owed to holders of General Unsecured Class Claims.   GOMO's claim registry reflects approximately $1.5 million in General Unsecured Claims.

### D.     Reservation of Rights.

Nothing under the Plan shall affect GOMO's rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

### E.     Nonconsensual Confirmation.

The Committee reserves the right to seek confirmation of the Plan under § 1129(b) of the Bankruptcy Code.   To the extent that any Class votes to reject the Plan, the Committee reserves the rights to modify the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTING THE PLAN

### A.     Available Cash.

Garden Oaks HOA shall pay all Allowed Administrative Claims, Priority Claims, Secured Claims, and Professional Fee Claims in full from Available Cash.   All remaining Available Cash shall be paid to GOMO's General Unsecured Creditors as described herein.

### B.     Proposed Amendments to Deed Restrictions.

Attached as Exhibit B are the Proposed Amendments to the Deed Restrictions.   Votes on the Proposed Amendments will be solicited in conjunction with votes on the Plan.   Further, votes will be solicited pursuant to Texas Property Code § 209.0041, which provides that approval of the Proposed Amendments to the Deed Restrictions requires the affirmative vote of 67% of all homeowners of each Section of Garden Oaks for such Section of Garden Oaks to adopt the Proposed Amendments to the Deed Restrictions.

### C.     Proposed Amendments to Bylaws.

Attached as Exhibit A is the Proposed Amendment to the Bylaws.   Votes on the Proposed Amendment to the Bylaws will be solicited in conjunction with votes on the Plan.   The Current Bylaws establish the voting threshold for approving the Amended Bylaws.

**D.      Approval by Sections.**

If some, but not all, Sections receive sufficient consents to adopt the Proposed Amendments to the Deed Restrictions, then after the Effective Date, Garden Oaks HOA shall be in force only with respect to those Sections that adopt the Proposed Amendments to the Deed Restrictions.

If no Section votes in favor of the Proposed Amendments to the Deed Restrictions, then after the Effective Date, Garden Oaks HOA shall be funded exclusively through voluntary donations and it may enforce deed restrictions as permitted under applicable non-bankruptcy law.

For any Section that does not receive sufficient consents to adopt to the Proposed Amendments to the Deed Restrictions, Garden Oaks HOA shall consent to entry of a declaratory judgment in the Adversary Case prohibiting Garden Oaks from collecting the Transfer Fee for such section.   Such declaratory judgment may be recorded in the real property records.

**E.      Election of New Board of Directors.**

There will be an election of new directors that will coincide with the Effective Date (the "Plan Election"). The Plan Election will be conducted according to procedures set forth herein.

In connection with the Plan Election, the homeowners will be entitled to elect three (3) Directors to represent their respective Sections.  One director for each Section will serve a term of approximately one (1) year – from the Effective Date until the first annual meeting following the Effective Date.   One (1) Director for each Section will serve a term of approximately two (2) years – from the Effective Date until the second annual meeting following the Effective Date.    One (1) Director for each Section will serve a term of approximately three (3) years – from the Effective Date until the third annual meeting following the  Effective Date.

In connection with the Plan Election, the candidate from each Section receiving the highest number of votes will serve the three-year term, the candidate from each Section receiving the next highest number of votes will serve the two-year term, and the candidate from each Section receiving the next highest numbers of votes will serve the one-year term.

In an election where two (2) or more candidates receive the same number of votes resulting in a tie, the winner of the election will be chosen by lot.

The Consent Form allows people to nominate themselves as candidates for the Board of Directors.   In order to appear on the ballot as a candidate for the Board of Directors, a person must not only self-nominate, but another homeowner must also support the nomination (i.e., second the nomination) of such person as provided for in the Consent Form.

**F.      Use of Third-Party Management Company**

The new Board of Directors is authorized to contract with a management company that will be responsible for day-to-day oversight of Deed Restriction enforcement issues. The Committee believes that having Garden Oaks HOA hire a management company is the most cost-effective method for objectively and efficiently enforcing Deed Restrictions.

**G.      Operations of GOMO Between the Confirmation Date and the Effective Date.**

GOMO shall continue to operate as debtor-in-possession during the period from the Confirmation Date through the Effective Date.

**H.      Terms of Injunctions or Stays.**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**I.      Conditions to Effectiveness**

The Plan will become effective upon the occurrence of each of the following:

  (i)      the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Committee elects, in its sole discretion, to consummate the Plan on an earlier date if an appeal is timely filed;

  (ii)     payment of any and all Allowed Secured Claims;

  (iii)    payment of any and all Allowed Priority Claims; and

  (iv)     the election of the new board of Garden Oaks HOA is complete.

**J.      GOMO's and Creditors' Committee Professionals.**

Upon the Effective Date, the Professionals employed by GOMO and the Committee shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; *provided, however*, that such Professionals shall be deemed retained after such date solely with respect to:  (i) applications filed pursuant to §§ 330 and 331 of the Bankruptcy Code; (ii) motions seeking enforcement of the provisions of the Plan or the Confirmation Order; (iii) review and, if appropriate, objections to any request for compensation or expense reimbursement filed by a Professional; (iv) defend against appeals of the Confirmation Order, if any; and (v) in the case of the Committee Professionals, the Post Effective Date Actions (defined below). Garden Oaks HOA shall pay the fees, costs and expenses of such Professionals incurred after the Effective Date from Available Cash, if such fees, costs and expenses are approved by the Bankruptcy Court.

**K.      Post-Effective Date Actions.**

Following the Effective Date, that the Committee shall continue to exist and have authority to act in this Chapter 11 Case, and its Professionals shall be deemed retained, after such date solely with respect to (collectively, the "*Post-Effective Date Actions*"): (i) seek reimbursement of expenses sought by a member of the Committee; and (ii) pursue and resolve objections to Claims.  Upon

substantial competition of the Post-Effective Date Actions, as determined by the Committee in its reasonable business judgement, the Committee shall file a notice (the "*Post-Effective Date Completion Notice*") on the docket in the Bankruptcy Case.   Upon the filing of the Completion Notice, the Committee shall dissolve, and its members and Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case.

Garden Oaks HOA shall pay the fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.

Promptly following the Post-Effective Date Completion Notice, Garden Oaks HOA shall make the Final Distribution.

# ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.     Distributions to Holders of Unsecured Claims.**

After the Effective Date, Garden Oaks HOA may make interim distributions of Available Cash to claimholders in the General Unsecured Class on a pro rata basis; provided that, Garden Oaks HOA reserves sufficient Available Cash for the Disputed Reserve; and provided further that, Garden Oaks HOA must make an appropriate reserve for administrative claims arising under the Plan after the Effective Date.

**B.     Delivery of Distributions.**

**1.     General Provisions; Undeliverable Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (i) the address of each holder as set forth in the Schedule, unless superseded by the address set forth on proofs of Claim filed by such holder or (ii) the last known address of such holder if no proof of Claim is filed or if GOMO has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, GOMO may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made, but no Distribution to any holder shall be made unless and until the then-current address of the holder has been determined, at which time the Distribution to such holder shall be made to the holder without interest from and after the Effective Date through the date of Distribution.  Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, Garden Oaks HOA until the Distributions are claimed or are deemed to be unclaimed property under § 347(b) of the Bankruptcy Code as set forth in the Plan.

**2.     Unclaimed Property.**

Except with respect to property not distributed because it is being held in the Disputed Reserve, Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to be unclaimed property under § 347(b) of the Bankruptcy Code, and the Claims with

respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that one-year period, the right of any Person to those Distributions shall be discharged and forever barred.

**C.      Manner of Cash Payments Under the Plan.**

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by Garden Oaks HOA.

**D.      Time Bar to Cash Payments by Check.**

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to the Plan shall be made directly to Garden Oaks HOA by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with § 347(b) of the Bankruptcy Code.

**E.      Compliance with Tax Requirements.**

In connection with making Distributions under the Plan, to the extent applicable, Garden Oaks HOA shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Garden Oaks HOA may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by Garden Oaks HOA to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with the Plan.

**F.      No Payments of Fractional Dollars and Minimum Distributions.**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.  Garden Oaks HOA shall not be obligated to make any Distribution of less than $5.00.

**G.      Interest on Claims.**

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Claim, or portion thereof, that is a

Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim, or portion thereof, becomes an Allowed Claim and Distributions are made on account thereof.  Except as expressly provided in the Plan or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

**H.      No Distribution in Excess of Allowed Amount of Claim.**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**I.      Setoff and Recoupment.**

GOMO may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that GOMO may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by GOMO of any right of setoff or recoupment that any of them may have against the holder of any Claim.

**J.      Establishment of the Administrative Claims Bar Date.**

The Confirmation Order will establish a deadline by which creditors must file applications for Administrative Claims. That date is known as the Administrative Claims Bar Date.

On or before the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of its Administrative Claim.  The request for payment of an Administrative Claim will be timely filed only if it is actually received by the Bankruptcy Court by the Administrative Claims Bar Date.

Professionals shall not be required to file a request for fees and expenses arising under §§ 328, 330, 331 or 503(b)(2)–(5) of the Bankruptcy Code on or before the Administrative Claims Bar Date, as they will instead file final fee applications by the Professional Fee Claim Bar Date.

### ARTICLE VI
### DISPUTED CLAIMS

**A.      No Distribution Pending Allowance.**

Notwithstanding any other provision of the Plan, Garden Oaks HOA shall not distribute any Cash or other property on account of any Claim that is Disputed unless and until such Claim or portion thereof becomes Allowed.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

**B.      Resolution of Disputed Claims; Claim Objection Deadline.**

Following the Effective Date, the Committee shall have the exclusive right to make and file objections to any Claims.  No other party, including Garden Oaks HOA, shall have the right to object to Claims after the Effective Date.

All objections to Disputed Claims will be filed and served upon the holders of each such Claim not later than one hundred eighty (180) days after the Effective Date; provided that this time period may be extended for additional periods of sixty (60) day if the Committee files a notice of extension on the docket prior to the expiration of the last period.  Furthermore, the Committee may continue to prosecute any claim objection filed during such period until the claim objection is resolved.

**C.      Estimation of Claims.**

At any time, the Committee may ask the Bankruptcy Court to estimate any contingent or unliquidated Claim to the extent permitted by § 502(c) of the Bankruptcy Code, regardless whether any party previously objected to such Claim or whether the Bankruptcy Court ruled on any such objection.

The Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Committee may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**ARTICLE VII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

This Plan constitutes a motion to reject all Executory Contracts and Unexpired Leases.  The entry of the Confirmation Order by the Bankruptcy Court will constitute approval of all such rejections and assumptions and assignments pursuant to §§ 365(a) and 1123 of the Bankruptcy Code.

**B.      Claims Based on Rejection of Executory Contracts and Unexpired Leases.**

Claims resulting from the rejection of Executory Contracts and Unexpired Leases or the expiration or termination of any Executory Contract or Unexpired Lease after the entry of the

Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on Garden Oaks HOA no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which proofs of Claim are not timely filed within that time period will be forever barred from asserting against GOMO, Garden Oaks HOA, their assets or properties unless otherwise ordered by the Bankruptcy Court. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in the Plan. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims that are timely filed as provided in the Plan shall be treated as a General Unsecured Class Claim.

## ARTICLE VIII
## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A.     Compromise and Settlement.

Pursuant to § 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the Plan constitutes a good-faith compromise of all Claims against GOMO. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of GOMO and holders of Claims.

### B.     Releases.

(a)     *Releases by GOMO.* Notwithstanding anything in this Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan, GOMO hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by GOMO) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by GOMO, existing or taking place prior to or on the Effective Date arising from or related in any way to GOMO, including, without limitation, those that GOMO would have been legally entitled to assert or that any holder of a Claim or other Entity would have been legally entitled to assert for or on behalf of GOMO and further including those in any way related to GOMO's bankruptcy estate, the Chapter 11 Cases or the Plan; *provided, however*, that the foregoing provisions in the Plan shall not operate to waive or release the Releasees from any obligation under this Plan or the Confirmation Order, as applicable.

(b)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article VIII the Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of GOMO and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and

opportunity for hearing; and (e) a bar to any of the Releasees asserting any Claim or Cause of Action thereby released.

### C.      Exculpation.

Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; *provided*, *however*, that the provisions of this paragraph shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided*, *further*, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties.

### D.      Dismissal of Adversary Proceeding.

The Committee shall dismiss the Adversary Case after entry of the required declaratory judgment under Article IV.D. of the Plan and, if no such declaratory judgment is required, within five (5) days of the Effective Date.

### E.      Injunction.

1.      Except as otherwise expressly provided for in this Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against GOMO or Garden Oaks HOA and their assets and properties, as the case may be, any suit, action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

(a)      Except as otherwise expressly provided for in this Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against GOMO, Garden Oaks HOA, the Committee, their successors and assigns and their assets and properties, any other Claims based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(b)      The rights afforded in this Plan and the treatment of all Claims in this Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, against GOMO, Garden Oaks HOA, or any of their assets or properties.  On the Effective Date, all such Claims against GOMO or Garden Oaks HOA shall be satisfied and released in full.

(c)      Except as otherwise expressly provided for in this Plan or in obligations issued pursuant to this Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim satisfied and released hereby, from:

     i.      commencing or continuing in any manner any action or other proceeding of any kind against GOMO, Garden Oaks HOA, their successors and assigns, or their assets and properties;

     ii.     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against GOMO, Garden Oaks HOA, their successors and assigns, or their assets and properties;

     iii.    creating, perfecting or enforcing any encumbrance of any kind against GOMO, Garden Oaks HOA, their successors and assigns, or their assets and properties;

     iv.    asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from GOMO or against GOMO's property, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim; or

     v.     commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Cause of Action released or settled hereunder.

**F.**    **Discharge.**

Upon confirmation of this Plan, GOMO is discharged from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

## ARTICLE IX
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and with respect to all matters related to the Chapter 11 Case, GOMO, its Estate, all property of the Estate and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance, secured status or priority of Claims;

2.    grant, deny or otherwise resolve any and all applications of Professionals for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which GOMO was party or with respect to which GOMO may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.      ensure that Distributions to holders of Allowed Claims and Member Interests are accomplished pursuant to the provisions of the Plan;

5.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving GOMO that may be pending on the Effective Date or instituted by the Committee after the Effective Date;

6.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      enforce the various provisions of this Plan;

10.     enforce the Injunction set forth in this Plan;

11.     resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in this Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.     enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.     enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

### A.      Final Fee Applications.

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of Accrued Professional Compensation shall be the Professional Fee Claim Bar Date.

### B.        Payment of Statutory Fees.

All fees payable pursuant to § 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, Garden Oaks HOA shall be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against GOMO under 28 U.S.C. § 1930 until entry of a Final Decree closing the case.  In addition, Garden Oaks HOA shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the case.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against GOMO.

### C.        Modification of the Plan.

Subject to the limitations contained in the Plan, the Committee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to (i) amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy § 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### D.        Revocation of Plan.

The Committee reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Committee revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Member Interests; (b) prejudice in any manner the rights of GOMO, the Committee, or any other Entity; or (c) constitute an admission of any sort by GOMO, the Committee, or any other Entity.

### E.        Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### F.        Governing Law and Construction.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and

construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.  Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the Confirmation Order.  All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

### G.     Reservation of Rights.

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by GOMO, the Committee, or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) GOMO or the Committee with respect to the holders of Claims or Member Interests or other parties in interest; or (ii) any holder of a Claim or Member Interest or other party-in-interest prior to the Effective Date.

### H.     Section 1146 Exemption.

Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

### I.     Section 1125(e) Good Faith Compliance.

GOMO, the Committee and each of their respective Representatives shall be deemed to have acted in "good faith" under§ 1125(e) of the Bankruptcy Code, and the Confirmation Order shall including a finding of fact to that effect.

### J.     Further Assurances.

GOMO, the Committee, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### K.     Filing of Additional Documents.

On or before the Effective Date, the Committee may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**L.**     **No Stay of Confirmation Order.**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

**M.**     **Bankruptcy Code Section 1141 Discharge.**

GOMO shall receive a discharge under § 1141 of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 28, 2019

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GARDEN OAKS MAINTENANCE ORGANIZATION, INC.**

*/s/ Gary C. Ingram*
Gary C. Ingram
Committee Co-Chair


DIAMOND McCARTHY LLP

By: */s/ Charles M. Rubio*
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Tel: (713) 333-5127
Michael D. Fritz
TBA No. 24083029
mfritz@diamondmccarthy.com
Tel: (713) 333-5128
909 Fannin, Suite 3700
Houston, TX 77010

*Counsel to the Official Committee of Unsecured Creditors of Garden Oaks Maintenance Organization, Inc.*

**Exhibit A to Plan**

**Proposed Amendment to the Bylaws**

[PROPOSED]

## AMENDMENT TO BYLAWS OF
## GARDEN OAKS HOMEOWNERS ASSOCIATION, INC. (F/K/A GARDEN OAK MAINTENANCE ORGANIZATION, INC.)

The Bylaws of Garden Oaks Homeowners Association, Inc. (F/K/A Garden Oak Maintenance Organization, Inc.) (the "Byalws") are hereby amended as follows:

1.      Garden Oaks Maintenance Organization, Inc. is renamed Garden Oaks Homeowners Association, Inc. (the "Association").   All references to "Organization" are changed to "Association."

2.      Section 3.05 is replaced in its entirety with the following:

3.05     Quorum. Except as otherwise provided in these Bylaws, the presence, in person or by proxy, absentee ballot, or electronic ballot, of Members representing at least ten percent (10%) of the total votes allocated to Owners of each participating Section of Garden Oaks constitute a quorum for the conduct of business at a meeting. If a quorum is not present at any meeting of Members, Members representing a majority of the Lots present at the meeting may adjourn and reconvene the meeting at a later time or date.  The Board may establish rules to implement proxy balloting, absentee balloting, and electronic balloting.

3.       Section 4.08 is replaced in its entirety with the following:

4.08      Quorum. A majority of the Directors then in office will constitute a quorum for the transaction of business at any Board meeting; provided that there must be at least one Director form each participating section of Garden Oaks.  If a quorum is not present at the meeting, a majority of the Directors present may adjourn the meeting from time to time without further notice.

4.       The following paragraphs are added to Article 4:

The Members will be entitled to elect three (3) Directors to represent their respective Sections.

In connection with the *Plan of Reorganization of the Official Committee of Unsecured Creditors of Garden Oaks Maintenance Organization* (the "Plan") filed in the U.S. Bankruptcy Court for the Southern District of Texas in the case styled as *In re Garden Oaks Maintenance Organization, Inc.*, Case No. 18-60018-H2-11, the current directors shall resign and new directors will be elected pursuant to the procedures in the plan (the "Initial Post-Reorganization Directors").

At the expiration of the terms of the Initial Post-Reorganization Directors, Directors will each thereafter be elected to serve a term for three (3) years. Each director will continue to hold office until his/her successor or elected.

At least thirty (30) days before the Association disseminates absentee ballots or other ballots to the Members for purposes of voting in a Board member election, the Association must provide notice to the Members soliciting candidates interested in running for a position on the Board. The notice must contain instructions for an eligible candidate to notify the Board of the candidate's request to be placed on the ballot and the deadline to submit the candidate's request. The deadline may not be earlier than the 30th day after the date the Board provides the notice.  The absentee ballot or other ballot must include the name of each eligible candidate from whom the Board received a request to be placed on the ballot so long as such request is supported in writing by another Member (i.e., another Member must second the nomination) and such support is received by the Board prior to the deadline to receive requests to be placed on the ballot.

The notices and ballots required by this provision must be:

1.   mailed to each Member; or
2.   provided by:
     (a) posting the notice in a conspicuous manner reasonably designed to provide notice to the Members:
         (i) on public or privately-owned property within the Subdivision in a conspicuous manner, with the Owner's consent; or
         (ii) on any Internet website maintained by the Association or other Internet media; and
     (b) sending by e-mail to each Member who has registered an e-mail address with the Association.

The Board will be responsible for the affairs of the Association and will have all of the powers necessary for the administration of the Association's affairs; provided that approval of a majority (50% plus one) of the Members of the Association at a meeting at which quorum is present in person, or by proxy, absentee ballot, or electronic ballot shall be necessary for the Board to take any of the following actions:

a.   Initiation of enforcement actions, excluding temporary restraining orders or violations involving a threat to health or safety;
b.   Increases in Assessments (up to 3% per year);
c.   A suspension of a right of a particular Member before the Member has an opportunity to attend a Board meeting to present the Member's position, including any defense, on the issue;
d.   Lending or borrowing money;
e.   The sale or purchase of real property;
f.   The filling of a vacancy on the Board;
g.   The construction of capital improvements other than the repair, replacement, or enhancement of existing capital improvements; or

     The Board's decision to deny an architectural approval shall be overruled if a a majority (50% plus one) of the Members at a meeting at which

quorum is present in person, or by proxy, absentee ballot, or electronic ballot vote to overrule the Board's decision.

The Board may employ for the Association a professional management agent or agents at a compensation established by the Board to perform such duties and services as the Board shall authorize. No controlling owner, representative, officer, director, or partner of the management agent or agent shall be a property owner in the Subdivision.

5.      Section 9.03 titled "Transfer Assessments" is deleted in its entirety.

**EXHIBIT B to Plan**

**Proposed Amendment to the Deed Restrictions**

[PROPOSED]

**AMENDMENT TO RESTRICTIONS APPLYING TO GARDEN OAKS, SECTION ___**

This Amendment (this "Amendment") to the Restrictions Applying to Garden Oaks, Section ___ (as amended, the "Deed Restrictions") are amended as set forth herein by the authority of the affirmative vote of Owners in Garden Oaks, Section ___ and pursuant to Texas Property Code § 209.0041. This Amendment becomes effective upon recording in the Official Real Property Records of Harris County, Texas.

Garden Oaks, Section ___ is a subdivision in Harris County, Texas according to the map or plat or legal description described in Exhibit A.

Garden Oaks, Section ___ is encumbered by the Deed Restrictions described in Exhibit B.

Capitalized terms used but not defined herein have the meanings assigned to such terms in the Deed Restrictions.

The Deed Restrictions are amended as follows:

1. The following section is added to the Deed Restrictions:

NAME CHANGE AND SUCCESSOR-IN-INTEREST.

(a) The name of the Organization shall be Garden Oaks Homeowners Association, Inc. Any and all references to "Garden Oaks Maintenance Organization, Inc." are changed to "Garden Oaks Homeowners Association, Inc."

(b) Any successor-in-interest to the Organization, whatever its name, and whether the succession of interest occurs through a merger, reorganization, or otherwise, shall have the authority to collect the Assessment.

2. The following section is added to the Deed Restrictions:

ASSESSMENTS

(a) Creation of Assessments.

The Owners of any Lot, by virtue of ownership of property within the Subdivision, covenant and agree to pay to the Organization an annual assessment ("Assessment") and any applicable late fees, interest and costs as more particularly set forth in these deed restrictions, as amended. Each such Assessment, together with attorney's fees, late fees, interest and costs, shall be the personal obligation of the person or entity who was the Owner of the land at the time when the Assessment became due. No diminution or abatement of Assessments or set-off shall be claimed or allowed by reason of any alleged failure of the Organization to take some action or perform some function required to be taken or performed by the Organization under these deed restrictions, as amended, or for inconvenience or discomfort arising from the making of repairs or improvements which are the responsibility of the

1

Organization. The obligation to pay Assessments is a separate covenant on the part of each Owner of a Lot.

(b) Annual Assessments.

i.       Purpose. Assessments levied by the Organization shall be used for any legal purpose for the benefit of the Subdivision as determined by the Organization and, in particular, may, by way of example and not limitation or obligation, include operational expenses of the Organization, enforcement of deed restrictions, payment of insurance premiums, costs of collection and litigation, administrative expenses, and any other services ancillary to the foregoing. The Organization may, in its sound discretion, give one or more of the purposes set forth herein preference over other purposes, and it is agreed that all expenses incurred and expenditures and decisions made by the Organization in good faith shall be binding and conclusive on all Owners.

ii.      Creation. Payment of the Assessment shall be the obligation of each Owner, subject to the provisions below, and shall be binding and enforceable as provided in these deed restrictions, as amended.

iii.     Rate. The initial Assessment established by the Organization shall not exceed EIGHTY DOLLARS AND NO/100 ($80.00) per Lot. An Owner who formally re-plats two or more Lots into one Lot with the approval of the City of Houston Planning and Development Department shall owe one Assessment. Similarly, an Owner who subdivides a Lot shall pay one Assessment per Lot created by the subdivision of the Lot.

iv.      Commencement. The Assessment for a Lot shall commence as soon as practical following July 1, 2019. Assessments shall be due in advance on July 1 for the coming year and shall be delinquent if not paid in full as of July 31st of each year.

v.       Levying of the Assessment. The Organization shall determine the sufficiency or insufficiency of the then-current Assessment to reasonably meet the expenses for providing services and capital improvements in the Subdivision and may, pursuant to the authority set forth in the Organization's bylaws, increase the Assessment in an amount up to three percent (3%) annually.  The Assessment shall not be adjusted more than once in a calendar year nor shall any increase be construed to take effect retroactively.

vii.     Over-65 Exemption. Any Owner who is or becomes sixty-five (65) years old or older after the date this Amendment is recorded in the Official Real Property Records of Harris County, Texas and has also received an over-65 homestead exemption on the Lot owned by the Owner in the Subdivision from the Harris County Appraisal District may apply to be exempted from payment of the Assessment for so long as the Owner continues to own the Lot ("Over-65 Exemption"). An Owner must apply for and receive approval in writing from the Organization for the Over-65 Exemption.

2

(c) Enforcement

The Organization may bring an action in law against the Owner personally obligated to pay the Assessment, late fees, interest, and costs, including attorneys' fees, incurred by the Organization in collecting same and obtain a personal judgment against the Owner. No lien is created herein to secure the payment of the Assessment.

(d) Revocation of Other Mandatory Fees

To the extent that any provision in the Deed Restrictions or the Organization's bylaws seeks to impose any other mandatory assessment or fee, such a provision is likewise null and void.

3.   The section titled "RACIAL RESTRICTIONS" is permanently deleted from the Deed Restrictions.

4.   The following section is added to the Deed Restrictions:

AMENDING AND MODIFYING DEED RESTRICTIONS

(a) Approval by the Owners of a majority (fifty percent (50%) plus one (1)) of the lots shall be required to amend or modify these deed restrictions.  Upon approval of the Owners, as set out herein, the amendment or modification shall be recorded in the Official Public Records of Harris County, Texas, whereupon to the extent of any conflict with the current deed restrictions and the new amendment, the new amendment shall control.

(b) The approval of multiple Owners of a lot may be reflected by the signature of any one Owner of such lot. Notwithstanding anything contained herein to the contrary, the Organization shall be entitled to use any combination of the following methods to obtain approval of the Owners for an amendment to these deed restrictions:

i.      by written ballot, or electronic ballot as same may be established by the Organization, that states the substance of the amendment and specifies the date by which a written or electronic ballot must be received to be counted;

ii.      at a meeting of the Members of the Organization, if written notice of the meeting stating the purpose of the meeting is delivered to the Owners of the lots; such notice may be hand-delivered to the Owners, sent via regular mail to the Owner's last known mailing address, as reflected in the Organization's records, or via email to the Owner's email address as reflected in the Organization's records;

iii.      by door-to-door circulation of a petition by the Organization or a person authorized by the Organization; and

iv.      any combination of the foregoing and any other method not prohibited under the deed restrictions and otherwise in accordance with applicable law.

3

5.  Any provisions in the Deed Restrictions, prior to giving effect to this Amendment, that contradict any provision of this Amendment are superseded and replaced by the terms of this Amendment.

CERTIFICATION

I, the undersigned, do hereby certify that I am the _____ of the Garden Oaks Homeowners Association and that this instrument constitutes the Amendment to the Restrictions applicable to Garden Oaks, Section ____  and was affirmatively approved by the Owners in Garden Oaks, Section _____.

IN WITNESS WHEREOF, I have hereunto subscribed my name on this the _____ day of _____, 2019.


By:     _____


Name: _____


Title:   _____


SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____, 2019, to certify which witness my hand and official seal.


_____

Notary Public

County of _____, State of Texas

My Commission Expires: _____