**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 18-60018** |
| **GARDEN OAKS MAINTENANCE** | § | |
| **ORGANIZATION, INC.,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO**
**DEBTOR'S DISCLOSURE STATEMENT AND CHAPTER 11 PLAN**

TO THE HONORABLE DAVID R. JONES, U.S. BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Garden Oaks Maintenance Organization, Inc. (the "Debtor") files its objection ("Objection") to the Debtor's *Disclosure Statement* [ECF No. 68] as amended by the *First Amended Disclosure Statement* [ECF 74] (the "Debtor's Disclosure Statement") and *Chapter 11 Plan of Reorganization* [ECF No. 70] (the "Debtor's Plan"), and in support thereof states the following:

**BACKGROUND**

1.      On April 11, 2018 (the "Petition Date"), the Debtor filed for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code").

2.      "In 2012, state court litigation was initiated involving the Debtor which resulted in a challenge to the enforcement of particular deed restrictions in section 3, and which also brought into question the validity of the 2002 Deed Restriction Amendments."   Debtor's Disclosure Statement, Article IV.A.1(k).  The 2002 Deed Restriction Amendments are the basis for the Debtor's authority to collect a certain transfer fee upon the sale of real property in Garden Oaks Sections 1, 2, 3 and 5.  The transfer fee is the Debtor's principal source of revenue.   After

the adverse rulings in the 2012 litigation, the Debtor "initiated this bankruptcy case to address the issues raised the 2012 litigation, and to potentially address certain current legacy deficiencies in the current deed restriction scheme."  Debtor's Disclosure Statement, Article IV.A.1(l).

3.      The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      On May 31, 2018, the U.S. Trustee appointed the Committee.

5.      On June 28, 2018, the Committee commenced an adversary proceeding to address the central reason for the Debtor's commencement of the bankruptcy case.  Specifically, the Committee asked the Court to enter a declaratory judgment stating that the Debtor has no authority to continue to collect the transfer fee in light of the findings and rulings made by the state court in the 2012 litigation.

6.      On or about July 27, 2018, the Committee sent the Debtor a chapter 11 plan term sheet outlining a potential chapter 11 plan.  The term sheet proposed allocating funds to establish a new homeowners association with a new mandatory fee and provided for a distribution of the Debtor's remaining cash to the creditors.  The Committee did not receive any substantive response from the Debtor on the term sheet.

7.      On August 23, 2018, the Court conducted a hearing where it ordered a suspension of the collection of the transfer fees.

8.      The Court ordered the Debtor and the Committee to participate in a series of town halls with the Garden Oaks community to obtain feedback on preparing a plan and addressing the Debtor's problems with respect to its authority to collect a mandatory fee.

9.      The Committee members and the Debtor's board had several meetings and town halls throughout Fall 2018.

10.    As a result of these meetings and town halls, the Debtor and the Committee each formulated chapter 11 plans.

11.    On January 8, 2019, the Debtor filed the Debtor's Chapter 11 Plan [ECF No. 70] and original Disclosure Statement [ECF No. 68].

12.    On January 27, 2019, the Debtor filed the amended Disclosure Statement [ECF No. 74].

13.    On January 28, 2019, the Committee filed is original chapter 11 plan [ECF No. 78] and original disclosure statement [ECF No. 79].

14.    On March 11, 2019, the Debtor filed its amended chapter 11 plan [ECF No. 98] and amended disclosure statement [ECF Nos. 99, 101, 106].[1]

15.    The Debtor's and the Committee's chapter 11 plans have much in common.  Both plans contemplate amending the deed restrictions to provide for a mandatory $80 annual fee per lot and reorganizing the Debtor into a new Garden Oaks Homeowners Association.

16.    The two plans differ on two crucial points.  First, the Debtor's plan provides for a distribution to unsecured creditors of $50,000, while the Committee's plan distributes all of the Debtor's cash that remains after satisfying the Debtor's estate's administrative claims.

17.    Second, the Committee's plan provides for streamlined deed restrictions amendment that focuses on the main problems to resolve in the bankruptcy case, leaving some of the Debtor's other proposed amendments for consideration by the future board of the reorganized Debtor.

---

[1]    Docket number 99 is a duplicate of docket number 100 – the Committee's proposed disclosure statement order.  The redline version of the Committee's amended disclosure statement is filed at docket number 101.  The Committee corrected docket number 99 by filing a correction at docket number 106.

18.     On January 27, 2019, the Debtor filed its *Motion to Approve Solicitation Material* [ECF No. 75].   On January 28, 2019, the Debtor filed its *Amended Motion to Approve Solicitation Material* [ECF No. 82].

19.     On January 28, 2019, after notice and hearing, the Court entered its *Order Conditionally Approving Disclosure Statement and Fixing Deadlines for Voting and Objections and Setting Final Hearing on Disclosure Statement and Confirmation Hearing* [ECF No. 86] (the "Disclosure Statement Order") and *Order Approving Solicitation Material* [ECF No. 84].

20.     Pursuant to the Disclosure Statement Order, the deadline to vote for the Debtor's Plan is April 1, 2019.

## ARGUMENT

### A.     GOMO's Chapter 11 Plan Improperly Classifies Claims in violation of Section 1122 of the Bankruptcy Code

21.     The Fifth Circuit has held that "one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."  *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991).

22.     The Debtor's plan improperly classifies similar claims differently in an attempt to gerrymander an affirmative vote.    Specifically, Class 2, Class 3 and Class 4 are all general unsecured claims.   The Debtor cannot separately classify these creditors in order to obtain an impaired accepting class.  *See In re GMG Capital Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014) (concluding that Chapter 11 debtor could not separately classify its principal creditor's $6.95 million unsecured claim apart from claims of other general unsecured creditors solely for purpose of obtaining an impaired accepting class consisting of other unsecured claims,

as required for it to confirm a proposed plan.).  Because the Debtor classified these similar claims differently in order to gerrymander an affirmative vote, the Debtor's Plan and Debtor's Disclosure Statement should be denied.

**B.      The Disclosure Statement Does Not Contain Adequate Information As Required Under Section 1125 of the Bankruptcy Code and Therefore the Debtor's Disclosure Statement Should Not Be Approved**

23.      Section 1125 of the Bankruptcy Code requires that a disclosure statement contain "adequate information," meaning "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable [] a hypothetical investor of [a] relevant class to make an informed judgment about the plan . . . ."  *See also In the Matter of Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).  Congress intended to require debtors to furnish parties-in-interest with sufficient information "to enable each participant to make an 'informed judgment' whether to approve or reject the proposal plan."  *In re Nw. Recreational Activities, Inc.*, 8 B.R. 10, 11 (Bankr. N.D. Ga. 1980).

24.      First, the Disclosure Statement contains contradictory, not adequate, information about vote tabulation.  Article II(2) of the Debtor's Plan states: "in determining acceptance of the Plan, votes will only be counted if submitted by a Creditor whose Claim is scheduled by the Debtor as undisputed, non-contingent, and unliquidated, or who prior to the hearing on confirmation of the Plan, has filed with the Bankruptcy Court a proof of claim that has not been disallowed or suspended prior to computation of the votes on the Plan."  This statement is inconsistent with Article VIII(g)(4) of the Debtor's Plan, which establishes the procedure for Class 5 voting.  For Class 5 voting, the Debtor allegedly provided a ballot to each owner of Sections 1, 2, 3 and 5 of Garden Oaks and presumably the Debtor is intending to count all votes

whether or not such owner is a Creditor as stated in Article II(2) of the Debtor's Plan.  The Disclosure Statement does not contain adequate information because it fails to inform certain parties-in-interest—namely, the owners in Sections 1, 2, 4 and 5 of Garden Oaks—whether they are entitled to vote on the Debtor's Plan.  Article II(2) states that it is only owners that have submitted proofs of claim; Article VIII(g)(4) says it is all the owners.

25.     Similarly, the Debtor's Ballot states: "If your ballot is not received by the Debtor's Attorney … your vote will not count as either an acceptance or rejection of the Plan." But that is inconsistent with the language in Article VIII(g)(4) of the Debtor's Disclosure Statement, which states: "A non-vote by any Class 5 member will be deemed an acceptance of the proposed Amended Deed Restrictions."

26.     Second, the Disclosure Statement lacks a liquidation analysis.  "Disclosure statements are required to contain liquidation analyses that enable creditors to make their own judgment as to whether a plan is in their best interests and to vote and object to a plan if they so desire.  The protections of creditors at confirmation and during the confirmation process are exceptionally strong." *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300–01 (Bankr. S.D.N.Y. 1990).  "Case law holds that in order to provide adequate information, the disclosure statement must contain a liquidation analysis which compares the proposed plan of reorganization with a Chapter 7 liquidation." *In re Diversified Inv'rs Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) (citing *In re Metrocraft Pub. Services, Inc.,* 39 B.R. 567 (Bankr. N.D. Georgia 1984); *In re Malek,* 35 B.R. 443 (Bankr. E.D. Mich. 1983); *and In re A.C. Williams Co.,* 25 B.R. 173 (Bankr. N.D. Ohio 1982)).  The Debtor's disclosure statement does not include a liquidation analysis and therefore does not contain adequate information as required under § 1125.

27.     <u>Third</u>, the Debtor's Ballot does not provide accurate information about the Plan. The Ballot states that there are 14 Classes; however, the Plan has five classes and Class 5 is subdivided into four sub-classes.  Simply stating that the Plan has 14 Classes is incorrect and is confusing to a party trying to make an informed judgement with respect to the Plan.

28.     Also, the Ballot only addresses secured, priority and unsecured nonpriority claims.  It does not identify the classes defined in the Plan and Disclosure Statement.  It does not include Class 5 – Homeowner Claims at all.

29.     Finally, the Debtor did not file a separate Ballot or deed-restriction consent document for Class 5 – Homeowner Claims.  The Committee intends to examine a representative of GOMO to determine what document was presented to holders of Class 5 to either accept the Plan or to accept the Amended Deed Restrictions.  The Committee reserves it rights with respect to the adequacy of the information contained in any solicitation materials sent to Class 5.

**C.     GOMO's Chapter 11 Plan Does Not Satisfy the Confirmation Requirements in Section 1129 of the Bankruptcy Code**

**i)     The Debtor's Plan is proposed in contravention of the Texas Property Code and violates Section 1129(a)(3)**

30.     Section 1129(a)(3) of the Bankruptcy Code provides "[t]he court shall confirm a plan only if . . .  [t]he plan has been proposed in good faith and not by any means forbidden by law."  "Means forbidden by law" includes state law.  *See e.g., In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) *citing* 5 Collier on Bankruptcy ¶ 1129.02, at 1129-13 (15th ed. 1984) ("[S]ection 1129(a)(3) requires that the proposal of the plan comply with all applicable law, not merely the bankruptcy law.")

31.     The Debtor's Plan contemplates the adoption of amended deed restrictions for Sections 1, 2, 3 and 5 of Garden Oaks.  The Debtor has chosen to rely on § 209 of the Texas

Property Code to adopt the deed restriction amendments.  Under subsection 209.0041(h-2), "[i]f the declaration is silent as to voting rights for an amendment, the declaration may be amended by a vote of owners owning 67% of the lots subject to the declaration."

32.     Article VIII(g)(4) of the Debtor's Plan provides that "A non-vote by any Class 5 member will be deemed an acceptance of the proposed Amended Deed Restrictions."  This deemed acceptance provision is in direct contravention of Texas Property Code, which requires an affirmative vote of owners of 67% of the lots to approve an amendment.

33.     Additionally, the deemed acceptance provision violates § 201.0058 of the Texas Property Code, which requires "any vote by a member of a property owners' association must be in writing and signed by the member."

ii)     **The Debtor's Plan Includes An Impermissible "Injunction" To Prevent Current and Future Homeowners From Challenging the Debtor's Authority to Collect the Transfer Fee**

34.     The Debtor's Plan impermissibly enjoins current and future homeowners from challenging the enforceability of the 2002 Amended Deed Restrictions.  The 2002 Amended Deed Restriction is the basis for the Debtor's authority to collect the transfer fee.  In the 2012 litigation, the 2002 Amended Deed Restrictions were found to be unenforceable.

35.     Article XI(c)(2) of the Debtor's Plan provides that "All entities shall be precluded from asserting against the Debtor or its assets or properties, any other or further claims … including claims related to the formation of the 2002 petition committee, [or] the adoption or enforceability of the 2002 Amended Deed Restrictions."  Such an injunction is beyond this Court's jurisdiction to adjust debtor-creditor relations.  This injunction is effectively a license for the Debtor to take property from future homeowners of Garden Oaks without having to assert any proper legal basis to do so.

### iii)        The Debtor's Plan Violates the Best Interest of the Creditors Test

36.      Section 1129(a)(7) of the Bankruptcy Code provides that:  "With respect to each impaired class of claims or interests-- (A) each holder of a claim or interest of such class-- (i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.]"  11 U.S.C. § 1129(a)(7).  This is known as the "best interest of the creditors test."

37.      The proponent of a plan has the burden of establishing that the plan satisfies § 1129(a)(7).  *In re Future Energy Corp.*, 83 B.R. 470, 489 (Bankr. S.D. Ohio 1988); *see also In re Landing Assocs., Ltd.*, 157 B.R. 791, 818–19 (Bankr. W.D. Tex. 1993) ("Before a plan may be confirmed in a case in which an impaired creditor has voted against the plan, the court must determine that such a creditor will receive under the plan at least what he would receive under a chapter 7 liquidation."); *In re New Midland Plaza Assocs.*, 247 B.R. 877, 895 (Bankr. S.D. Fla. 2000).

38.      The Debtor's Plan states that it "provides a greater chance of recovery than that which is likely to be achieved under the other alternatives regarding the reorganization or liquidation of the Debtor."  However, the Plan does not include the required liquidation analysis to demonstrate the best interest of the creditor's test is being satisfied.

39.      The Debtor's Plan provides that it will use the funds remaining after satisfaction of administrative expenses for the purpose of returning post-petition transfer fees to the homeowners in the amount of $160,880.00 and a distribution of $50,000 to the unsecured creditors.   The Plan provides that the funds remaining after such payments will be "utilized to

fund the operation of the Reorganized Debtor for approximately two (2) years." Debtor's Disclosure Statement, Article VII.B.7.

40.     The Committee believes that there would be substantially more than $50,000 available to unsecured creditors under a hypothetical liquidation.  In fact, according to the Debtor's Disclosure Statement, the Debtor's estate will have funds to operate the Reorganized Debtor for two years that could be used to distribute to the creditors.  Accordingly, it is apparent that the Debtor's Plan does not meet the best interest of the creditors test because such funds allocated to operate the Debtors for two years would be distributed to the creditors in a hypothetical liquidation.  Because the Debtor's Plan does not make a distribution to creditors in an amount that the creditors would receive in a hypothetical chapter 7 liquidation, the Debtor's plan fails the best interest of the creditors test and cannot be confirmed.

### iv)     Debtor Cannot Rely On Cramdown Provisions to Address Violations of Texas State Law

41.     Section 1129(b) of the Bankruptcy Code establishes "cramdown" provisions that permit a plan proponent to propose alternative arrangements for satisfaction of plan confirmation over objection of dissenting class of creditors.  The Debtor cannot use the cramdown provision of § 1129(b) to force the property owners to adopt amendments to their deed restrictions.  This process for adopting amendments to the deed restrictions is governed by the Texas Property Code.  Section 1129(b) only applies to whether the treatment of claims and interests, i.e., the property being provided to such claim holders, is fair and equitable.

### v)     Debtor Will Not Be Able To Satisfy Section 1129(b) Requirements For Any Non-Accepting Classes

42.     As of the time of this filing, the Committee does not know the results of the Debtor's balloting process and in turn the Committee does not know if the Debtor is going to

attempt to cramdown any classes of creditors.   The Committee believes that the Debtor will not be able to satisfy the requirements of Section 1129(b) with respect to any non-accepting class. The Committee reserves its rights to object to a cram down of a dissenting class of creditors.

## **RESERVATION OF RIGHTS**

43.     The Committee is intending to take the deposition of a Debtor's corporate representative to obtain discovery related to the Debtor's Disclosure Statement and Plan.

44.     As of the time of this filing, the Debtor has not filed the results of its balloting process.

45.     The Committee expressly reserves all rights to assert additional objections to the Debtor's Plan and Debtor's Disclosure Statement based on (i) additional discovery the Committee receives after the date hereof, (ii) the ballot results, and (iii) any modification or supplement of the Debtor's Plan or Debtor's Disclosure Statement.

*[Remainder of Page Intentionally Left Blank]*

## <u>CONCLUSION</u>

WHEREFORE the Committee respectfully requests that the Court enter an order in the form attached hereto denying the Debtor's Plan and denying the Debtor's Disclosure Statement and provide for such other relief that is just and proper.

Dated: April 1, 2019

Respectfully submitted,

DIAMOND MCCARTHY LLP

*/s/ Charles M. Rubio*
Charles M. Rubio (State Bar No. 24083768)
crubio@diamondmccarthy.com
Michael D. Fritz (State Bar No. 24083029)
mfritz@diamondmccarthy.com
Fannin, Suite 3700
Houston, TX 77010
Telephone:  713-333-5100
Facsimile:  713-333-5199

*Counsel to The Official Committee of Garden Oaks Maintenance Organization, Inc.*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to the Order Setting Notice Procedures [ECF No. 8], this document was served on those parties registered to receive ECF notifications in this case on April 1, 2018, and the following parties by first class United States Postal Service Mail:

    a.   The Debtor; and

    b.   The twenty largest unsecured creditors.

*/s/  Charles M. Rubio*
Charles M. Rubio

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 17-34230** |
| **GARDEN OAKS MAINTENANCE** | § | **(Jointly Administered)** |
| **ORGANIZATION, INC.,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**ORDER DENYING DEBTOR'S PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT**

Based on the Objection filed by the Official Committee of Unsecured Creditors of

Garden Oaks Maintenance Organization, Inc. (the "Committee") to the Debtor's *Chapter 11*

*Plan of Reorganization* [ECF No. 70] and *First Amended Disclosure Statement* [ECF No. 74]

and in consideration of the record at the hearing held on April 9, 2019, the Court finds the

following: (a) the Debtor's Plan improperly classifies claims under § 1122 of the Bankruptcy

Code, (b) the Debtor's Disclosure Statement lacks adequate information as required by

Bankruptcy Code § 1125, and (c) the Debtor's Plan does not satisfy Bankruptcy Code

§§ 1129(a)(3), 1129(a)(7) or 1129(b). Accordingly, it is hereby

ORDERED that final approval of the Debtor's Disclosure Statement is DENIED and it is

further

ORDERED that approval of the Debtor's Plan is DENIED.

Dated _____, 2019.

_____
The Honorable David R. Jones
United States Bankruptcy Judge